No. 13,979.

WADDELL ET AL. *v.* TRAYLOR.
(64 P. [2d] 1273)

Decided January 25, 1937.

Mr. FLOYD F. MILES, for plaintiffs in error.

Messrs. QUIAT, GINSBERG & CREAMER, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

A REHEARING was granted in this case and our former opinion withdrawn. The following now is announced as the opinion of the court. Herein reference will be made

to plaintiffs in error as defendants and to defendant in error as plaintiff.

Defendants bring the cause here to reverse a judgment rendered against them for an unpaid balance on a promissory note. They admit the execution of the note of date November 9, 1931, for the named principal sum of $380, due six months from the date thereof, and payable in monthly installments, the first five to be $25 each and the final one in the amount of $255. The expressed rate of interest was twelve per cent per annum from the date of the note, payment of which was secured by a chattel mortgage on household furniture and other property.

For a first defense defendants allege payment of an amount more than sufficient to satisfy the note, if they were charged only what they allege is lawful interest. A second defense alleges that upon the execution of a former note for $375, of which the note in suit is a renewal, they received from the plaintiff's assignor, one T. H. Traylor, since deceased, the sum of $300, that $75, balance of the expressed principal of the first note was to be paid, under the contract, to the said Traylor as additional interest or compensation for the use of the borrowed money. They further allege that said $75 is reflected in the amount of the note, the subject of the suit. If the note is valid and enforceable in accordance with its terms the judgment is correct and should stand.

Defendants contend that at the time of the execution of the original note, said T. H. Traylor, the payee, was subject to, but failed to comply with, the provisions of chapter 108 of the 1913 Session Laws of Colorado, regulating the loaning of money in this state. For a third defense it is alleged that Traylor was subject to, but failed to comply with, the requirements of chapter 93 of the 1917 Session Laws, relating to the loaning of money; and a fourth defense states that the interest charge demanded and contracted to be paid, was and is unconscionable and unreasonably oppressive. It is alleged further

that plaintiff acquired the note and chattel mortgage after maturity with full knowledge of the equities of the defendants. The district court sustained a general demurrer to the second, third and fourth defenses. On these rulings defendants assign error.

After the date of the execution of the note this court, in the case of *Gronert v. People,* 95 Colo. 508, 37 P. (2d) 396, held the Money Lenders Act (Session Laws of 1919, c. 159, §§3781-3801, C. L. 1921) to be unconstitutional. The 1919 act in express terms repealed chapter 108, Session Laws of 1913, and chapter 93, Session Laws of 1917, supra. Defendants contend that the attempted repeal of these laws by the act of 1919, which act was held unconstitutional in the Gronert case, was ineffectual and that our opinion left the acts of 1913 and 1917 standing as the law of this state. Plaintiff does not challenge the correctness of this contention. The two acts finally were repealed by chapter 157, Session Laws of 1935, which became effective before the complaint in this action was filed.

The plaintiff, while admitting that the attempted repeal in 1919 was void, contends that the 1913 act is unconstitutional; that its subject is not expressed in the title; that it is special or class legislation; and that interest may be charged at any rate upon which the parties to the transaction may agree, since there is no express declaration in the act that loans bearing interest exceeding the limitations therein specified shall be void. Defendants point out that notwithstanding there is no provision in express terms that interest exactments exceeding the specified rates shall void the note or be unenforceable as to such excess, there is a provision that treble the interest paid, if in excess of the rate specified, may be recovered by the party paying the excess, and that a violation of the provisions of the act shall be a misdemeanor. If the above mentioned $75 be held to be interest on the note here involved, or as consideration for the use of the money, as it must be, the amount con-

tracted for is greatly in excess of 12 per cent per annum on the money actually loaned. This act of 1913 was before our court in the case of *Cavanaugh v. People,* 61 Colo. 292, 157 Pac. 200. With respect to the sufficiency of the title of the act we said in that case: "It would seem clear, therefore, that the title of this act 'to regulate the business of loaning money' would cover a provision concerning interest on money loaned. We are of the opinion that the title fully meets the requirements of section 21 of Article V of the Constitution." With respect to its being class legislation and unjustly discriminatory we also stated: "It is said, further, that the law is unjust and unreasonable because it exempts national banks, state banks, trust companies, building and loan associations and title and guarantee associations, and does not apply to those who loan money at 12 per cent or less, or who loan without security.

"The exceptions, however, appear to be reasonable, inasmuch as they cover only money lenders who are already subject to governmental supervision and control. Such exceptions have been held reasonable by the Supreme Court of the United States. *Griffith v. Connecticut,* 218 U. S. 563, 54 L. Ed. 1151, 31 Sup. Ct. 132."

██ ██ The provisions in the act, that treble the interest paid, if in excess of the rates specified, may be recovered, and that a violation of the act shall be a misdemeanor, amounts, we think, to a declaration of public policy that a contract for payment of interest in excess of the specified rate shall not be enforceable as to such excess, and this, notwithstanding section 3779, C. L. 1921 (S. L. '89, p. 206, §3), providing that "The parties to any bond, bill, promissory note, or other instrument of writing, may stipulate therein for the payment of a greater or higher rate of interest than eight per cent per annum, and any such stipulation may be enforced in any court of competent jurisdiction in the state." That the legislature in 1889 did not see fit to place restrictions on the rate of interest to be charged did not preclude it, in

1913, from making certain interest charges void or even criminal. In so far as the two acts are inconsistent the later act must prevail.

 It is apparent under the facts alleged in the answer in this case—the truth of which is admitted by the demurrer thereto—that to permit plaintiff to recover the interest claimed would allow a consideration for the use of the money received greatly in excess of rate fixed by the 1913 act as lawful, and would be equivalent to holding that plaintiff might enforce, through court proceedings, the payment of excess interest, the taking of which constitutes a misdemeanor. Courts will not lend their aid to the enforcement of terms of a contract which will result in the consummation of a criminal act, or one contrary to the public policy of the state. *Cumberland Tel. & Tel. Co. v. Evansville,* 127 Fed. 187; *Hill v. Cruce,* 146 Ark. 61, 225 S. W. 11; *Coppell v. Hall,* 7 Wall. (U. S.) 542 [*Hall v. Coppell*], 19 Law Ed. 244; *Sharp v. Teese,* 9 N. J. Law 352, 17 Am. Dec. 479.

Section 1 of chapter 108, Session Laws 1913, so far as here material, is as follows: ''That hereafter it shall be unlawful, without first procuring the license hereinafter provided for, to engage in the business of making loans of money or of personal credit, on any security of any kind, direct or collateral, tangible or intangible, upon which there is directly or indirectly charged or received interest, discount or consideration greater than twelve per centum per annum. The foregoing prohibition shall apply to any person who by any device or pretense of charging for his services or otherwise seeks to obtain a larger compensation in any case hereinbefore provided for.''

Section 8 of the same chapter provides in part: ''The phrase 'engage in the business of making loans' as used herein shall be taken to apply to and include every person who shall make any loan of money or of personal credit upon any security whatsoever where the rate of interest,

discount, or consideration charged is greater than twelve per centum per annum.''

▮ It is alleged in the answer that plaintiff's assignor was engaged in the business of making loans and that he had not procured the license required. Assuming this to be true, as we must, since the matter arises on demurrer, it follows that any interest or consideration charged for the loan in excess of 12 per cent per annum is unlawful. Being unlawful, plaintiff cannot invoke the aid of the courts to enforce collection of such excess.

▮ Since the act does not in express terms make a note void when the consideration charged for the use of the money is in excess of that therein specified as lawful, but provides that only charges in excess of those specified shall constitute a misdemeanor, and fixes the punishment therefor; providing further that treble the interest paid may be recovered, we hold that other penalties are thereby excluded and that there may be a recovery of the money actually loaned with such consideration for its use as might lawfully have been contracted for under the act.

In *Wood v. Cuthbertson,* 3 Dak. 328, 21 N. W. 3, Mr. Justice Hudson of the Supreme Court of Dakota said: ''This [the penalty provided by law], we think, is exclusive of all other remedies. The Code having declared the law as to the recovery of usurious interest there is no common law right.''

*Union Gold Mining Co. v. Rocky Mountain National Bank,* 1 Colo. 531, was a case involving a loan in excess of that which the bank might lawfully make, for which a penalty of forfeiture of its charter was provided. The unlawfulness of the loan was set up as a defense. In an opinion by Hallett, C. J., it was said:

''In the well-considered case of *Harris v. Runnels,* 12 How. 79, it was said that a contract to do a thing prohibited by statute, is not necessarily void if the statute visit the unlawful act with a penalty. If the thing prohibited is malum in se, the contract cannot be enforced,

but as to things not immoral or against public policy it may be sufficient to enforce the statutory penalty only. Accordingly it was recently decided in Maryland that a provision in the charter of a bank prohibiting any director or other officer under penalty of fine or imprisonment from borrowing money from the bank, does not exempt a director from liability for money loaned to him in violation of the prohibition. *Lester v. Howard Bank,* 33 Md. 558.

"If it was not the intention of congress to make the contract void, it will be enforced, and for the violation of law the penalty which the statute gives may be applied. That penalty attends every violation of the act, and is found in section 53. Another and additional penalty is attached to some of the acts prohibited by the statute, as for instance in section 30, it is provided that taking illegal interest shall work a forfeiture of the entire interest, and failure to comply with the provisions of sections 31 and 32 may result in the appointment of a receiver to wind up the business of the bank. This may show that, whatever consequences were to follow the violation of the act are expressed in the act itself, and where one penalty is given I do not think we are at liberty to attach another."

To the same effect is *Farmers, etc. National Bank v. Dearing,* 91 U. S. 29, 23 Sup. Ct. 196.

That the note in question falls within the provisions of chapter 93, Session Laws of 1917, plaintiff does not deny, but maintains that in so far as that act relates to the charging of interest in excess of twelve per cent per annum, it is void because the subject of the act is not clearly expressed in its title as required by section 21, article V of the Constitution of the state. The title is as follows: "An Act concerning the loaning of money in sums not exceeding five hundred dollars, at interest not exceeding one per cent. per month, and concerning the assignment of salaries and wages due or to be earned in the future; providing a penalty for the violation thereof,

and repealing all acts and parts of acts in conflict herewith.'' This title indicates that the act is with reference to interest at rates of twelve per cent or lower. The act itself in section 1 thereof provides that ''When any person * * * shall contract for, exact or receive directly or indirectly, as interest or for the use of the money loaned, any sum of money or other thing of value in excess of one per cent (1%) per month on the amount actually loaned * * * such bond, bill, note or other evidence of debt, * * * shall be void and non-enforcible, * * *.'' In *People v. Friederich,* 67 Colo. 69, 185 Pac. 657, we held that a statute providing for the protection of girls *under* the age of 16 years was void because it did not come within the title, ''An Act for the protection of girls eighteen years of age.'' We see no essential difference in that case and the case at bar; nor do we see any essential difference in principle in the instant case and the situation which the court had under consideration in the Gronert case, in which we held the act of 1919 unconstitutional because its title did not clearly indicate its purpose, as section 21, article V of our Constitution requires. The court was not in error in sustaining plaintiff's demurrer to the third defense.

In the light of our holding that section 1 of the act of 1913 sets 12 per cent per annum as the limit of the consideration that may be charged for the use of money by an unlicensed money lender, and since under the facts, admitted on the demurrer, no greater amount than that may be collected in this case, the question of whether or not the consideration claimed for the use of the money is unconscionable and oppressive becomes moot and is immaterial so far as this case is concerned. That question being eliminated from the case we need not determine as an abstract proposition of law whether the sustaining of the demurrer to the defense was or was not proper.

Plaintiff makes the further contention that since the 1913 act was repealed by chapter 167, Session Laws

of 1935, which was prior to the time suit was instituted on the note here in question, that the penalty for the usurious interest fell with the law and that defendants cannot now avail themselves of this statute as a defense. She cites numerous cases from other jurisdictions laying down this rule, but the matter is settled otherwise by section 6519, C. L. 1921, which provides that the repealing of a statute shall not have the effect to extinguish any penalty, forfeiture or liability, either civil or criminal, which shall have been incurred under such statute unless the repealing act shall so expressly provide.

The judgment is reversed and the cause remanded with advice to the trial court that its ruling sustaining the demurrer to the third defense shall stand and that the fourth defense be eliminated as moot. Our directions are that it overrule the demurrer to the defendants' second defense, and that further proceedings may be taken in the case not inconsistent with the views herein expressed.

Mr. Justice Bouck specially concurs.

Mr. Justice Bouck specially concurring.

I concur in the judgment of reversal, directing the district court to overrule the demurrer to the second defense, which is based upon alleged violation of the so-called loan shark law of 1913. But why limit the defendants to this one affirmative defense? Why and by what procedure can their fourth defense be "eliminated" by this court as "moot"? The defendants, setting forth the full facts, allege in this defense that the interest charged against them under the promissory note here involved is unconscionable. This is legally either a good defense or not. If it is, and if the facts should support the claim, this would be a good independent defense even though the 1913 statute were not invoked, or though for any reason whatever the second defense were withdrawn from the case altogether. If unconscionableness is not a

good defense, this court ought to say so by declaring that· the lower court properly sustained the demurrer to it. A defendant has the right to plead and rely upon as many defenses as he wishes, whether consistent with one another or not. See Denison, Code Pleading in Colorado, section 269. We ought not to annihilate, arbitrarily and of our own motion, any integral part of the pleadings prepared by the litigants presumably with a view to ultimate trial on the merits in the court below. Such annihilation is not within the lawful power of this court.