## DEMMER v. DEMMER. (No. 426.)

(Court of Civil Appeals of Texas. Waco. Nov. 4, 1926. Rehearing Denied Dec. 23, 1926.)

**1. Divorce ⬤➾130—Evidence as to wife's bad temper and angry accusations held not to entitle husband to divorce on grounds of ill treatment (Rev. St. 1925, art. 4629, subd. 1).**

Evidence in action for divorce on grounds of ill treatment, indicating only bad temper by wife and angry accusations by her as to drunkenness and gambling activities, *held* not to bring case within Rev. St. 1925, art. 4629, subd. 1, providing for divorce on grounds of ill treatment.

**2. Divorce ⬤➾109—Under statute assigning ill treatment as ground for divorce, ill treatment, rendering living together insupportable, must be proved (Rev. St. 1925, art. 4629, subd. 1).**

Rev. St. 1925, art. 4629, subd. 1, providing for divorce on grounds of ill treatment, should be strictly construed so that divorce should not be granted merely because married people have disputes and differences of opinion; parties being required to bring themselves within strict rule that ill treatment must be such as to render it insupportable for parties to live together.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Suit for divorce by Felix E. Demmer against Annie Demmer. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

R. L. Johnson and Tirey & Tirey, all of Waco, for appellant.

W. L. Eason, of Waco, for appellee.

BARCUS, J. This suit was instituted by Felix E. Demmer against his wife, Annie E. Demmer, for a divorce. The cause was tried to the court, and resulted in judgment being rendered for appellee dissolving the bonds of matrimony, from which judgment appellant has appealed, and by various assignments of error contends that the judgment of the trial court is not supported either by the pleadings or the testimony.

The principal testimony offered in the trial court was that of appellee and appellant themselves. Appellee testified that he and appellant were married in 1909 and lived together, with a few intermissions, until the 2d day of June, 1925; that the domestic trouble between himself and his wife began about 1916, when she would get mad and accuse him of staying away at places where he had no business and of coming home late at nights. He testified that he was and had been for a number of years working at the shops, and that some days he would be detained at the shops and could not get home at the regular hour. He testified that appellee accused him of going to two certain different places and gambling; that he had never gambled in his life. He said she further accused him once or twice of being intoxicated with liquor; that he never was intoxicated; that he did keep a little intoxicating liquor around the place, and drank a little in his wife's presence. He testified that his wife, in 1919, accused him of having relations with another woman, "a cousin of mine." He said his wife also accused him of "beating her up," and that she told others that he had "beat her up," and particularly she told her doctor and her pastor. He testified that he never struck or mistreated his wife. He said his wife accused him of having a social disease. He testified he left her in February, 1924, and in August, 1924, he went to the hospital at Denison for a few days, because he was sick, and in October, 1924, he came back to his wife and lived with her until they separated in June, 1925. He testified that her treatment as above had been going on for 10 years and that for 7 or probably 10 months at a time he was not able to stand up to his work on account of his worries; that he brooded over his troubles; and that the conduct of his wife caused him to lose 25 pounds in weight; and that at the time he left home he was a wreck, both mentally and physically.

On cross-examination appellee testified that he had perhaps left his wife a dozen times; that the first time he left home was about 1920 or 1921. He testified that his wife would curse him; that the last time she cursed him was about 1921 or 1922; that it was in 1920 or 1921 that she accused him of gambling and drinking, and that it was in 1920 or 1921 that she accused him of having improper relations with his cousin; that his wife told her pastor about all of these troubles in the summer of 1924, while he was

separated from her; that he and his wife belonged to the same church, and their pastor tried to get them to go back together; that he left his wife on February 28, 1924, and went back home to her on the 1st of October, 1924, and that she received him lovingly; that he told her, "Let's bury the hatchet and get along together." He testified that at that time he loved her. He testified, further, that during the Christmas holidays in 1924 his wife got mad and told him that Mr. Lehmann told her that he had gone to the hospital the summer before to be treated for a social disease. Appellee testified that his wife said, "I don't believe Mr. Lehmann, but you are none too good to go and get messed up with a disease." He testified that he continued to live with his wife after that until the 2d day of June, when they separated.

This suit was filed in the summer of 1925. Neither appellant nor appellee testified that there was any harsh word spoken or anything said or done by either party from Christmas, 1924, until the separation in June, 1925, to in any way mar the happiness of the home, and, judging from the record alone, they had no troubles during those 5 months. Neither of the parties testified to any word spoken or any act performed by the other from 1922 to June, 1925, except the accusation of the wife on Christmas, 1924.

Appellant testified that she at all times did her part by appellee, her husband; that he did a few times back in 1920 and 1921 strike her, and from the record it seems that during those years their domestic relations were very strained, and that they had considerable trouble keeping their home intact, and according to appellee's testimony he left home several times. As to how long he was gone, and over how much time the dates of separations extended, the record is silent. There is nothing in the record to show why appellee left his wife in February, 1924. He does not testify to any act on her part that caused him to leave, or that in any way justified his leaving her. The record shows that they had been married for 16 years and had no children.

Paragraph 1 of article 4629 of the Revised Statutes of 1925 provides that a divorce may be granted:

"Where either party is guilty of excesses, cruel treatment or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable."

[1, 2] If appellant, under his pleadings in this case, is entitled to a divorce, he must bring himself within this provision of the statute. In order to authorize the court to grant a divorce, and thereby destroy the home, the evidence must be sufficient to satisfy the appellate court that the ill treatment has been such as to render it insupportable for the parties to live together. This provision of the statute should be strictly con-

strued, and a divorce should not be granted simply because married people have fusses, disputes, and differences while traversing the matrimonial sea. Blake v. Blake (Civ. App.) 263 S. W. 1075. While, as stated by the Supreme Court in Eatman v. Eatman, 75 T. 473, 12 S. W. 1107, every case must be governed by the particular facts relating thereto, and that no hard, fixed rule can be established, we think, before a divorce is granted on account of ill treatment, the parties should bring themselves within the strict rule, and not rely simply upon their feelings or desires.

It appears to us from the record in this case that, taking appellee's testimony in the most favorable light for him and strongest against his wife, he fails to show any just grounds for having abandoned her, or any legal reason why a court should dissolve the bonds of matrimony. He testified himself that she was a good housekeeper and a good cook, and the only railing accusation he brought against her was that she had a high temper and would get mad, and in her frenzies would accuse him of getting drunk and gambling and staying out late at nights, and told him that a Mr. Lehmann told her that he had a social disease; that she did not believe it, but that she did not think he was too good to be "messed up" with an affair of that sort. We do not think these accusations and words, even if true, would be sufficient to justify a court in dissolving the bonds of matrimony. Blake v. Blake, supra; Hubbard v. Hubbard (Civ. App.) 231 S. W. 160; McCrary v. McCrary (Civ. App.) 230 S. W. 187; Bingham v. Bingham (Civ. App.) 149 S. W. 214; Bush v. Bush (Civ. App.) 103 S. W. 217; Snodgrass v. Snodgrass (Civ. App.) 258 S. W. 263.

Because we do not think the testimony in this cause is sufficient to authorize a divorce, the judgment of the trial court is reversed, and the cause remanded.